```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------X
```

J & J SPORTS PRODUCTIONS, INC., as
Broadcast Licensee of the September 19,
2009, Mayweather/Marquez Broadcast

                Plaintiff,

                                            **MEMORANDUM & ORDER**

    -against-

DENIZE WELCH, individually, and as                10-CV-0159 (KAM)
officer, director, shareholder and/or
principal of DENIZE CREOLE CORNER INC.,
d/b/a DENIZE'S CREOLE CORNER, and
DENIZE'S CREOLE CORNER INC., d/b/a
DENIZE'S CREOLE CORNER,

                Defendants.

```
------------------------------------X
```
**KIYO A. MATSUMOTO, UNITED STATES DISTRICT JUDGE:**

        Plaintiff, J & J Sports Productions, Inc., brings this action against Denize Welch, individually, and as officer, director, shareholder and/or principal of Denize Creole Corner Inc., d/b/a Denize's Creole Corner ("Defendants") for alleged violations of the Federal Communications Act of 1934, codified as amended, 47 U.S.C. §§ 553 and 605.

        Upon failure of defendants to appear, answer or respond to the complaint, plaintiff now moves for default judgment. Plaintiff's motion for entry of a default judgment seeks statutory damages of up to $10,000 and enhanced damages of up to $100,000 against the defendants for violation of 47 U.S.C. § 605(a). Plaintiff also seeks attorney's fees and costs.

Defendants have not submitted any opposition to plaintiff's motion, despite receiving notice and an opportunity to do so. (*See* ECF No. 5, Ex. 10, Certificate of Service.)

For the reasons set forth below, the court grants plaintiff's motion for entry of a default judgment and, pursuant to 47 U.S.C. §§ 605(e)(3)(C)(i)(II), 605(e)(3)(C)(ii), and 605(e)(3)(B)(iii), orders that judgment be awarded in favor of the plaintiff, and against defendants in the amount of $15,521.75, inclusive of basic and enhanced statutory damages of $14,012.25, attorney's fees of $784.50, and costs of $725.00.

## BACKGROUND

According to the complaint, plaintiff acquired the rights to distribute the Mayweather/Marquez boxing match held on September 19, 2009 (the "Event"), which was broadcast via closed-circuit television and via encrypted satellite signal. (ECF No. 1, Complaint ("Compl.") ¶ 16.) Defendant Denize Welch is an officer, director, shareholder and/or principal of Denize Creole Corner Inc., d/b/a Denize's Creole Corner" (the "Establishment"), and "was the individual with supervisory capacity and control over the activities occurring within the [E]stablishment on September 19, 2009." (Compl. ¶¶ 8-9.) Denize Creole Corner Inc., d/b/a Denize's Creole Corner, is a

business entity with principal place of business located at 2602 Church Avenue, Brooklyn, New York. (Compl. ¶ 11.)

Plaintiff contracted with various establishments in New York State, authorizing those entities to publicly broadcast the Event to their patrons. (Compl. ¶ 17.) The broadcast of the Event originated as a satellite uplink, and was re-transmitted to cable and satellite providers via satellite signal. (Compl. ¶ 16.)

Plaintiff also contracted with an investigative agency to retain independent investigators to visit various establishments in the New York City area on the night of the Event. (*See* ECF No. 5, Ex. 1, Affidavit of Joseph Gagliardi dated March 17, 2010 ("Gagliardi Aff.") ¶ 4.) The investigators were provided with a list of authorized and legal locations that had paid the required fee to broadcast the Event, so that the investigators would visit only locations that were not authorized to broadcast the Event. (*Id*. at ¶ 5.) Plaintiff includes with its motion the affidavit of an independent investigator who states that he visited the Establishment on September 19, 2009, at approximately 11:46 p.m. (ECF No. 5, Ex. 1-C, Affidavit of C. Charidemou dated September 22, 2009 ("Charidemou Aff.").) The investigator observed one television set exhibiting the Event and approximately 85 individuals in the establishment, which had an unknown occupancy. (*Id*.)

According to plaintiff, the defendants' broadcast of the Event was not authorized by plaintiff, and cannot be mistakenly or innocently intercepted. (Gagliardi Aff. ¶¶ 8-9.) Plaintiff states that such unauthorized broadcasts cannot occur "without the willful and intentional modifications of electronic equipment, the business misrepresentation of a commercial establishment as residential, or, the removal of cable traps and/or devices designed to prevent such unauthorized exhibits." (*Id.* ¶ 16.)

Plaintiff filed the instant action on January 12, 2010 and served the summons and complaint on defendants on January 27 and February 5, 2010. (ECF Nos. 3-4, Affidavits of Service.) Defendants have not appeared, answered or otherwise responded to the complaint.

## DISCUSSION

**A.     Liability**

Rule 55(b)(2) of the Federal Rules of Civil Procedure provides that the Court may enter judgment against the defaulting party when a plaintiff moves for judgment against an adverse party who has failed to answer or otherwise appear in the action. When a default judgment is entered, the defendant's failure to respond constitutes an admission of the well-pleaded factual allegations in the complaint, except as to the

4

allegations relating to damages. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981). Moreover, an inquest by affidavit, without an in-person hearing, may be conducted so long as the court can ensure "a basis for the damages specified in the default judgment." *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997) (quoting *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989)). Thus, the movant need only show adequate support for the relief it seeks. *Greyhound*, 973 F.2d at 158-59.

As noted above, plaintiff's complaint invokes 47 U.S.C §§ 553 and 605(a). Sections 553 and 605 apply, respectively, to cable and radio communications, but both provisions apply where a cable-borne transmission originates as a radio transmission. Section 553(a)(1) provides that:

> No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law.

Section 605(a) provides that:

> No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such

5

> communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

Section 605(a) applies to "'the interception of cable-borne, as well as over-the-air, pay television' where cable-borne transmissions originate as satellite transmission." *Kingsvision Pay-Per-View Corp., Ltd. v. Keane*, No. 02 CV 5173, 2006 WL 1704474, at *3 (E.D.N.Y. June 16, 2006) (citing *Int'l Cablevision v. Sykes*, 75 F.3d 123, 130 (2d Cir. 1996)). Both statutes apply when television programming is transmitted or intercepted over both cable and satellite. *Sykes*, 75 F.3d at 133.

**B.  Damages**

Unlike allegations pertaining to liability, those pertaining to damages are not deemed admitted in the context of a motion for default judgment. *Greyhound*, 973 F.2d at 158. Therefore, the movant must establish its entitlement to the recovery of damages. *Id.* As stated above, no hearing is required because plaintiff seeks statutory damages, rather than actual damages, and because defendants have not responded to plaintiff's allegations despite having had notice and an opportunity to do so. *Transatlantic Marine*, 109 F.3d at 111 (quoting *Fustok*, 873 F.2d at 40).

In the instant action, plaintiff's motion for default seeks damages only under 47 U.S.C. § 605(a). Plaintiffs seeking

6

compensation for damages and lost profits under 47 U.S.C. § 605 may elect to seek either actual damages and lost profits or statutory damages. *See* 47 U.S.C. § 605(e)(3)(C)(i); *see also Time Warner Cable v. Googies Luncheonette, Inc.*, 77 F. Supp. 2d 485, 489 (S.D.N.Y. 1999); *Garden City Boxing Club, Inc. v. Perez*, No. 05CV3713, 2006 WL 2265039, at *5-6 (E.D.N.Y. Aug. 8, 2006). In this case, plaintiff seeks statutory damages. (ECF No. 5, Ex. 3, Mem. of Law in Support of Default Judgment dated March 22, 2010 ("Pl. Mem.") at 9.) Where a party elects to recover statutory damages, it may recover an award of $1,000 to $10,000 for each violation of § 605(a). 47 U.S.C. § 605(e)(3)(C)(i)(II). The court, in its discretion, may award up to an additional $100,000 in enhanced damages where the violation was willful and was committed for commercial advantage or financial gain. 47 U.S.C. § 605(e)(3)(C)(ii).

As other courts have noted, 47 U.S.C. § 605 provides no statutory definition of the term "violation." *See Perez*, 2006 WL 2265039, at *5. "However, most cases applying this statute in a commercial context have interpreted the showing of an event on a single night as one violation." *Id.*

"In determining the amount of damages that can be imposed for each violation within the range of $1,000 to $10,000 per violation, Section 605 leaves the decision within the sound discretion of the court." *Id.* Courts in this circuit have

relied upon one of two methods for calculating statutory damages in cases involving the unauthorized receipt and exhibition of pay-per-view events. *See Googies Luncheonette*, 77 F. Supp. 2d at 489. The first method bases the award on the number of patrons in the establishment who viewed the broadcast. *See, e.g., Time Warner Cable v. Taco Rapido Rest.*, 988 F. Supp. 107, 111 (E.D.N.Y. 1997) (awarding damages on a per patron basis). The second method awards a flat sum for each violation. *See, e.g., Entm't by J&J, Inc. v. Suriel*, No. 01 Civ. 11640, 2003 WL 1090268, at *1 (S.D.N.Y. Mar. 11, 2003) (awarding a flat sum of $11,000 for basic and enhanced damages); *Kingvision Pay-Per-View, Ltd. v. Jasper Grocery*, 152 F. Supp. 2d 438, 442-43 (S.D.N.Y. 2001) (awarding a flat sum of $15,000 for basic and enhanced damages).

In cases where there is uncontradicted evidence of the number of patrons viewing the match in an establishment, courts have used the first approach and multiplied the number of patrons by a set sum, the price to view the event at home on a pay-per-view channel, *see, e.g., J & J Sports Prods., Inc. v. Hot Shots, Inc.*, No. CV-09-1884, 2010 U.S. Dist. LEXIS 91058, at *4-5 (E.D.N.Y. Apr. 27, 2010) ($54.95 per patron); *J & J Sports Prods., Inc. v. Arhin,* No. 07 CV 2875, 2009 U.S. Dist. LEXIS 32852, at *3 (E.D.N.Y. Apr. 17, 2009) (same), plus any cover charges or other profits attributable to the unauthorized

viewing.  This is based on the theory that the patrons who watched the unauthorized broadcast would have ordered it individually for residential use.  *See Googies Luncheonette*, 77 F. Supp. 2d at 490.

Here, plaintiff seeks $10,000, the statutory maximum under 47 U.S.C. § 605(e)(3)(C)(i)(II).  (Pl. Mem. at 8.)  The investigator's affidavit states that 85 individuals were present when the investigator observed the broadcast of the Event, and that the capacity of the Establishment was unknown.  (Charidemou Aff.)  An award of $54.95 per patron, the "typical" purchase price for a pay-per-view broadcast of this nature, *Arhin,* 2009 U.S. Dist. LEXIS 32852, at *3, would result in a total award of $4,670.75.  *See also Hot Shots*, 2010 U.S. Dist. LEXIS 91058, at *4–*5.

Plaintiff further seeks an enhancement of damages for willfulness of up to $100,000, pursuant to 47 U.S.C. § 605(e)(3)(C)(ii).  (Pl. Mem. at 8.)  To receive enhanced damages, plaintiff must prove that defendants' broadcast of the Event was willful and for "purposes of direct or indirect commercial advantage or private financial gain."  47 U.S.C. § 605(e)(3)(C)(ii).  The broadcast of an event without authorization is a deliberate act, and thus establishes willfulness.  *See Taco Rapido Rest.*, 988 F. Supp. at 111; *Googies Luncheonette*, 77 F. Supp. 2d at 490-91.  Courts

9

typically consider the following factors in determining whether a defendant's willful conduct calls for enhanced damages: "repeated violations over an extended period of time; substantial unlawful monetary gains; significant actual damages to plaintiff; defendant's advertising for the intended broadcast of the event; defendant's charging a cover charge or charging premiums for food and drinks." *J & J Sports Prods., Inc. v. Alvarez*, No. 07 Civ. 8852, 2009 U.S. Dist. LEXIS 89602, at *12 (S.D.N.Y. Sept. 10, 2009) (citation omitted).

Plaintiff does not allege or present evidence that the defendants advertised or displayed the Event to entice patrons into the Establishment, imposed an admission or cover charge, or that the Establishment brought in significant income as a result of displaying the Event. Nonetheless, plaintiff is entitled to a further enhancement of the damages award because the record demonstrates that the defendants affirmatively and willfully intercepted the Event for financial gain, and that there is no way that the defendants could have inadvertently intercepted plaintiff's broadcast. (Gagliardi Aff. ¶¶ 8, 9, 16.)

In circumstances demonstrating such willful violation, it is appropriate to assess enhanced damages in conjunction with statutory damages. As some courts have observed, awarding the statutory minimum prescribed "'would not be sufficient

deterrence' since the penalty would merely be 'the amount that should have been paid.'" *Cablevision Sys. New York City Corp. v. Diaz*, No. 10 Civ. 4340, 2002 WL 31045855, at *4 (S.D.N.Y. July 10, 2002) (quoting *Time Warner Cable v. Domsky*, No. 96 Civ. 6851, 1997 WL 33374593, at *6 (S.D.N.Y. Sept. 5, 1997)). In light of the statutory objective of deterring future violations of 47 U.S.C. § 605, coupled with defendants' willful violation of this provision, the court finds that enhanced damages of $9,341.50, or two times the amount of basic statutory damages, are appropriate in this case. *See, e.g.*, *Entm't by J&J Inc. v. Nina's Restaurant and Catering*, No. 01 CIV.5483, 2002 WL 1000286, *3 (S.D.N.Y. 2002)(awarding an enhancement of two times the damages award for willfulness). Accordingly, the court awards plaintiff $4,670.75 in basic statutory damages and $9,341.50 in enhanced statutory damages, for a total damages award of $14,012.25.

**C. Attorneys' Fees and Costs**

Plaintiff's motion requests attorney's fees in the amount of $784.50, and costs in the amount of $725. (ECF No. 5, Ex. 2, Atty Aff. of Costs and Fees ("Lonstein Aff.").) An award of costs, including reasonable attorney's fees, is mandatory under 47 U.S.C. § 605(e)(3)(B)(iii). In determining a reasonable attorney's fee, the "most useful starting point . . . is the number of hours reasonably expended on the litigation

multiplied by the reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  The district court has "considerable discretion" to set a reasonable hourly rate.  *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 190 (2d Cir. 2007).  In the absence of unusual circumstances or particularly difficult legal questions, the district court should be guided by what a "reasonable, paying client, who wishes to pay the least amount necessary to litigate the case effectively" would be willing to pay.  *Id*. at 184.

In support of plaintiff's request, plaintiff's counsel has provided records of work performed in litigating the instant action.  Counsel's time record reflects an expenditure of 3.21 hours of attorney time at a rate of $200 per hour, totaling $642, and 1.90 hours of paralegal time at a rate of $75 per hour, totaling $142.50.  (Lonstein Aff. ¶ 4.)  The court finds that the resulting fee of $784.50 is reasonable, comparable to awards of attorney's fees in similar cases, and reflects the absence of unusual circumstances or particularly difficult legal questions.  *See, e.g., J & J Sports Prods., Inc. v. Bernal*, No. CV 2009-3745, 2010 U.S. Dist. LEXIS 89488 (E.D.N.Y. July 28, 2010) (finding reasonable attorney's hourly rate of $200 and paralegal's hourly rate $75).  Thus, the court grants

plaintiff's request for attorney's fees in the amount of $784.50.

The court has also examined plaintiff's request for costs and finds that plaintiff has submitted documentary evidence to support its request for $735 in costs, constituting a $350 filing fee and $375 for service of the summons and complaint upon the defendants. Accordingly, the court awards plaintiff $725 in costs.

**D. Liability of the Individual Defendants**

Plaintiff names Denize Welch as an individual defendant and alleges that Welch is an officer, director, shareholder and/or principal of and doing business as Denize Creole Corner Inc. d/b/a Denize's Creole Corner. (Compl. ¶ 8.) The complaint also alleges that, upon information and belief, Welch was the individual with supervisory capacity and control over activities occurring within the Establishment on September 19, 2009. (Compl. ¶ 9.) To establish a violation of 47 U.S.C. § 605(a) by an individual defendant, plaintiff must show that the individual defendant "authorized" the violations set forth in the complaint. *See Kingvision Pay-Per-View Ltd. v. Olivares*, No. 02 Civ. 6588, 2004 WL 744226, at *5 (S.D.N.Y. Apr. 5, 2004) (citing *Softel Inc. v. Dragon Med. & Sci. Commc'ns*, 118 F.3d 955, 971 (2d Cir. 1997)). "To establish vicarious liability, [plaintiff] must show that . . . [the individual defendant] had

13

a 'right and ability to supervise' the infringing activities and had 'an obvious and direct financial interest in the exploitation of [the] copyrighted materials.'" *Id.* (quoting *Shapiro, Bernstein & Co. v. H.L. Green Co.*, 316 F.2d 304, 307 (2d Cir. 1963)).

Assuming the truth of the undisputed allegation in the complaint, the motion for entry of a default judgment establishes the requisite control and financial interest for Welch. *See id.* (finding requisite control and financial interest where individual defendants were sole proprietor and officer, director, shareholder, and/or principal of defendant establishments). Therefore, the court determines that Welch is jointly and severally liable with her business for the violation of 47 U.S.C. § 605(a) discussed above. Accordingly, the court finds that plaintiff's award be limited to a single recovery against the individual defendant and the corporate defendant, jointly and severally.

## CONCLUSION

For the foregoing reasons, the court enters judgment against the defendants, jointly and severally, in the total amount of $15,521.75, comprised of basic and enhanced statutory damages of $14,012.25, attorney's fees of $784.50, and costs of

14

$725.00. The clerk is directed to enter judgment in favor of the plaintiff in the amount of $15,521.75 and close this case. Plaintiff is ordered to serve a copy of this Memorandum and Order on defendants and file a declaration of service by November 11, 2010.

**SO ORDERED.**

Dated:   Brooklyn, New York
         November 10, 2010

                                        _____/S/_____
                                        **KIYO A. MATSUMOTO**
                                        United States District Judge
                                        Eastern District of New York